IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

**DANCO LLC DBA NEWKS EXPRESS CAFÉ AND**
**INDY EATERY LLC DBA NEWKS CAFÉ**             **PLAINTIFFS**

v.             No. 3:20cv235-MPM-JMV

**STATE AUTO PROPERTY AND**
**CASUALTY INSURANCE COMPANY**             **DEFENDANT**

## ORDER

The parties have filed competing motions for judgment on the pleadings in this case, which involves important insurance coverage issues arising out of the Covid-19 pandemic. This case turns upon the application of a Restaurant Extension Endorsement ("Restaurant Endorsement") in a policy issued by State Auto Property and Casualty Insurance Company ("State Auto") to certain Newks restaurants which are operated by the plaintiffs in this case. The crucial endorsement language at issue in this case provides, in relevant part, that:

> 1. The Causes of Loss applicable to the Business Income form attached to this policy shall also include the following:
> a. The "suspension" of your "operations" at the described premises due to the order of a civil authority; or adverse public communications or media reports, resulting from the actual or alleged: (1) Food or drink poisoning of a guest at the described premises; or (2) Exposure of the described premises to a contagious or infectious disease.

RESTAURANT EXTENSION ENDORSEMENT C.1., Doc. 2 at Ex. A.

Plaintiffs argue that the above policy language entitles them to business income loss coverage under their State Auto policies, writing in their brief that:

> Beginning in March 2020, various civil authorities in the states where Plaintiffs' Newk's branded restaurants are located (Mississippi, Indiana, Kentucky, and Tennessee) ordered the suspension of dine-in services as a result of alleged exposure to COVID-19. Plaintiffs' resulting business income losses fall squarely within the wording of the coverage in the Restaurant Endorsement as those words are commonly understood. In

1

> addition, based on its structure, the Restaurant Endorsement can reasonably be read as (1) covering suspension of business due to the order of a civil authority, alone; and (2) covering suspension of business due to adverse public communications or media reports resulting from alleged food or drink poisoning of a guest or alleged exposure to a contagious or infectious disease. The endorsement's structure creates an ambiguity that under well-established precedent must be construed in Plaintiffs' favor.

[Plaintiff's brief at 2]

In considering nearly identical motions filed by the parties in March 2021, this court noted the pendency of an appeal before the Fifth Circuit which, it believed, might well prove dispositive in this case.[1] The appeal in question involved a Texas district court's dismissal of a very similar insurance coverage lawsuit, and this court indicated that, if the Texas ruling were to be affirmed, then it "seems likely that … this will … prove fatal to the plaintiffs' claims in this case." [Slip op. at 3, citing *Terry Black's Barbecue, LLC v. State Auto. Mut. Ins. Co.*, 2020 WL 7351246, at *9 (W.D. Tex. Dec. 14, 2020)]. In expressing its inclination in this regard, this court was motivated partly by its view that the district court in *Terry Black's* had made the correct interpretation of the virtually identical policy language at issue in that case, and it was aware of no aspect of Mississippi law which would require a different result here. In its order, this court approvingly quoted the language of the district court's opinion in *Terry Black's*, in which the Texas court wrote that:

> Plaintiffs argue that, in contrast to the business interruption loss provision discussed above, the Restaurant Endorsement does not require a showing of direct physical loss of or damage to property. Plaintiffs contend that their claim is covered under this provision because they suspended their business operations as a result of the civil authority orders issued in response to COVID-19, an infectious disease.
> Plaintiffs, however, have glossed over the requisite elements of this provision. Although Plaintiffs are correct that the Restaurant Endorsement does not require direct physical loss or damage to property to trigger coverage, the clear terms of the provision require Plaintiffs to show (1) a suspension of business operations (2) due to a civil authority order (3) that was issued in response to the actual or alleged exposure of the premises to a contagious or infectious disease. Plaintiffs have not met the third requirement.

---

[1] In light of that conclusion, this court stayed this case pending the Fifth Circuit's ruling.

> First, as noted earlier, Plaintiffs do not allege in their Petition that their restaurants were ever exposed to the virus that causes COVID-19. Plaintiffs merely speculate that the virus could have been present because it was prevalent in the Austin and Dallas communities. See Dkt. 24 at 1 (noting the "presumed presence" of COVID-19); id. at 13. Such conclusory allegations are insufficient to show that this provision is applicable.
>
> In addition, Plaintiffs must show that the civil authority orders were issued as a result of the presence of COVID-19 at their restaurants. But the civil authority orders did not result from the actual or alleged exposure to COVID-19 at Plaintiffs' restaurants. The civil authority orders were issued in response to the global pandemic, not in response to the actual or alleged presence of the virus that causes COVID-19 at Plaintiffs' restaurants. Accordingly, Plaintiffs have not demonstrated the causal connection required for coverage. *See Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Merchs. Fast Motor Lines, Inc*., 939 S.W.2d 139, 142 (Tex. 1997) (holding that policy language covering injury "caused by an accident resulting from the ... use of a covered auto" required a causal relationship between the injury and use of the auto). The Court finds that the Restaurant Endorsement Provision does not apply.

[slip op. at 2, quoting *Terry Black's*, 2020 WL 7351246, at *9].

The district court in *Terry Black's* thus concluded, and this court agrees, that a policy provision which covers a "suspension of operations … due to the order of a civil authority" resulting from "exposure of the described premises to a contagious or infectious disease" is not implicated by business closure orders issued by many states during the Covid-19 pandemic. Doc. 2 at Ex. A. In so concluding, the key point for this court, as it was for the district court in *Terry Black's*, is that the public health orders in question "were issued in response to the global pandemic, not in response to the actual or alleged presence of the virus that causes COVID-19 at Plaintiffs' restaurants." *Id.* at 9. This court regards this as a rather common-sensical and somewhat obvious point, and it is therefore unsurprising that the Fifth Circuit likewise stated on appeal that:

> [F]rom a common sense understanding of the onset of the pandemic, the civil authority orders were not caused, even tangentially, by [the business's] alleged or actual exposure to a contagious disease. The civil authority orders "resulted from" the global pandemic and the need to take measures to contain and prevent the spread of COVID-19. The language in the orders indicates that they were enacted to *avoid* exposure to COVID-19,

3

> not *because of* exposure to COVID-19. In fact, those orders say as much in the introductory declarations.

*Terry Black's Barbecue, L.L.C. v. State Auto. Mut. Ins. Co.,* 22 F.4th 450, 458-59 (5th Cir. 2022).

Since *Terry Black's* applied Texas law, it is not, strictly speaking, binding authority in this case, but this court reiterates that it is aware of no aspect of Mississippi law which would require a different result here. This conclusion is strengthened by the fact that, in a March 15, 2022 order entered in *Univ. Mgmt., Inc. v. State Auto Prop. & Cas. Ins. Co.,* Judge Brown dismissed coverage arguments very similar to those raised in this case, based on policy provisions which are virtually identical to those here. 2022 WL 805879, at *3–4 (N.D. Miss. Mar. 15, 2022). In rejecting the plaintiff's argument that the policy provisions at issue in *Univ. Mgmt* were ambiguous, Judge Brown, applying Mississippi law, wrote that:

> The Endorsement, titled "Business Income – Limited Extension for Food-Borne Illness," provides coverage for:
>> The suspension of your "operations" at the described premises due to the order of a civil authority; or adverse public communications or media reports, resulting from the actual or alleged: Food or drink poisoning of a guest at the described premises; or Exposure of the described premises to a contagious or infectious disease.
>
> This Court concludes that the Endorsement is unambiguous. Read together, the first two phrases establish suspension of operations at the described premises as an event that must occur to trigger coverage. However, the use and placement of the phrases "due to" and "resulting from" after the suspension language signal additional requirements for coverage. The use of the phrase "due to," which is defined as "as a result of" or "because of," between the suspension language and the "order of civil authority, adverse public communication, or media report" language plainly conditions the suspension of operations at the described premises on the occurrence of an order, adverse public communication, or media report. However, even where operations at the covered premises are suspended due to a civil order, that order must also "result from" an actual or alleged "[e]xposure of the described premises to a contagious or infectious disease." When used as a verb, "result" is defined as "to proceed or arise as a consequence, effect, or conclusion." The "resulting from" language therefore indicates the need for a causal link between an actual or alleged exposure of the premises and the order suspending operations at the premises The Mississippi Court of Appeals has recognized that "the accepted definition of the phrase 'result of' ... requires *a cause* from which an effect would follow." *Clarendon Nat'l Ins. Co. v. McAllister*, 837 So. 2d 779, 780 (Miss. Ct. App. 2003) (emphasis added).

4

> Exposure is defined as "the fact or condition of being exposed," such as "the condition of being subject to some effect or influence, like the flu. When followed by and read together with "of the described premises," the use of the word exposure indicates that the described premises itself must be affected by something—in this case, a contagious or infectious disease. Therefore, "exposure of the described premises" is reasonably interpreted to require a premises-specific exposure to a contagious or infectious disease. Considering the plain language of the Endorsement as a whole, the phrase "resulting from" requires an order suspending operations to be at least causally connected to an actual or alleged premises-specific exposure.

*Univ. Mgmt.*, 2022 WL 805879, at *3–4 (N.D. Miss. Mar. 15, 2022).

In this case, plaintiffs make very similar arguments that the relevant policy provisions are ambiguous, but this court agrees with Judge Brown's conclusion that this is not the case. In their brief, plaintiffs emphasize that, as a ruling of a fellow district judge, Judge Brown's decision is not binding precedent in this case. While this is true, this court is certainly at liberty to agree with Judge Brown's reasoning, and it finds her analysis fully persuasive. This court notes that a number of other courts in various states have reached very similar results, *see Isaac's Deli, Inc. v. State Auto. Prop. & Cas. Ins. Co.*, 539 F. Supp. 3d 424 (E.D. Pa. 2021); *Wild Eggs Holdings, Inc. v. State Auto Prop. & Cas. Ins. Co.*, --- F. Supp. 3d ---, 2021 WL 4234940 (W.D. Ky. Sept. 16, 2021); *Nashville Underground, LLC v. AMCO Ins. Co.*, 2021 WL 826754 (M.D. Tenn. Mar. 4, 2021); *Paradigm Care & Enrichment Center v. West Bend Mut. Ins. Co.*, 529 F. Supp. 3d 927 (E.D. Wis. 2021); *Dakota Girls, LLC v. Philadelphia Indem. Ins. Co.*, 17 F. 4th 645, 651-52 (6th Cir. 2021), and it therefore has little difficulty in concluding that defendant has, by far, the better of the coverage arguments in this case. This court will accordingly grant defendant's motion for judgment on the pleadings and deny plaintiffs' competing motion seeking similar relief.

It is therefore ordered that defendant's motion for judgment on the pleadings [42-1] is granted, and plaintiff's competing motion for judgment on the pleadings [47-1] is denied.

A separate judgment will be entered this date, pursuant to Fed. R. Civ. P. 58.

5

This the 3rd day of May, 2022.

                                        /s/ Michael P. Mills
                                        UNITED STATES DISTRICT JUDGE
                                        NORTHERN DISTRICT OF MISSISSIPPI